UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 25-00024-01 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| TAMMY D. MCNEIL (01) | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Tammy D. McNeil's ("McNeil") Motion to Dismiss the Indictment. See Record Document 21. McNeil moves to dismiss the three-count indictment, under which she is charged with possessing a firearm in violation of 18 U.S.C. § 922(g)(1). See id. The United States of America ("the Government") opposed. See Record Document 23. McNeil replied. See Record Document 24. For the reasons set forth below, McNeil's Motion (Record Document 21) is **DENIED**.

**BACKGROUND**

On October 21, 2022, McNeil was convicted of forgery in Caddo Parish in case number 221052. See Record Document 23 at 2. She was sentenced to 30 days in parish jail and sentenced to two years hard labor, which was suspended for one year in 2002. See id. On February 5, 2025, McNeil was indicted on one count (Count Three) of felon in possession of a firearm and ammunition under 18 U.S.C. § 922(g)(1). See Record Document 1; see also Record Document 21 at 1.

**LAW AND ANALYSIS**

**I. Law.**

The Second Amendment to the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. However, it is well-established that, ""[l]ike most rights, the right secured by the Second Amendment is not unlimited." D.C. v. Heller, 554 U.S. 570, 626, 128 S. Ct. 2783, 2817 (2008). Thus, under the Supreme Court's most recent guidance in Bruen, courts must engage in a two-step inquiry to determine whether a regulation placing restrictions on a party's Second Amendment rights is constitutional. Bruen, 597 U.S. 1, 24, 142 S. Ct. 2111, 2129–30 (2022). First, a court must ask whether "the Second Amendment's plain text covers an individual's conduct." Id. If the Second Amendment does cover the individual's conduct, the court then must ask whether the government has satisfied its burden of showing "the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. Only where the regulation is "consistent with the Second Amendment's text and historical understanding" can it pass constitutional muster. Id. at 26, 2131.

Recently, in U.S. v. Diaz, the Fifth Circuit analyzed an as-applied constitutional challenge to § 922(g)(1) under Bruen. 116 F. 4th 458 (5th Cir. 2024). The Court held that a charge serving as a predicate for a defendant's § 922(g)(1) charge must rely on previous history. Id. at 467. A felon is among "the people" protected by the Second Amendment. Id. at 466. "The plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)." Id. at 467. To satisfy its burden under Bruen, "the government must 'identify a well-established and representative historical analogue, not a historical twin.'" Id.

Furthermore, the "[e]vidence must be 'relevantly similar' to the challenged law." Id. When a court assesses similarly, it should "consider 'whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified.'" Id.

**II. Summary of the Arguments.**

McNeil specifically challenges the validity of § 922(g)(1), as it purportedly prohibits her Second Amendment right to possess and use arms for personal protection and defense. See Record Document 21-1 at 3. Section 922(g)(1) states:

> (g) It shall be unlawful for any person—
>
> (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). She asserts that because Count Three infringes on her Second Amendment rights, it is unconstitutional as applied to her and must be dismissed unless the Government meets its burden, which it has allegedly failed to do. See Record Document 21-1 at 3–4.

In opposition, the Government argues McNeil's conviction for a felony forgery offense permits the dispossession of firearms. See Record Document 23 at 2. The Government advances that the historical tradition of severely punishing forgery goes back to England before the founding era and then continued in the colonies. See id. at 3. The Government contends that at the time of the founding, the federal government and multiple states embraced punishing forgery as a capital crime. See id.

Additionally, the Government avers that the facts of the instant case support a finding of dangerousness. See id. at 7. McNeil was found to be in possession of a large amount of methamphetamine. See id. Next to the methamphetamine, in her purse, was a handgun to which she admitted possession. See id. The Government asserts that McNeil surrounded herself with drugs and violent cohorts. See id. Ultimately, the Government submits it has provided sufficient evidence that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to McNeil. See id.

McNeil replied, reiterating that Count Three infringes on her Second Amendment right, and thus, it is unconstitutional as applied to her and must be dismissed. See Record Document 24 at 4. She avers that felons are included in "the people" protected under the Second Amendment. See Record Document 1–2. Furthermore, McNeil asserts that the Fifth Circuit acknowledged the Third Circuit's holding that "crimes akin to founding-era forgery are likely insufficient to justify disbarment under the Second Amendment." See id. at 3 (quoting U.S. v. Davis, No. 24-20258, 2025 WL 958265, fn 2 (5th Cir. Mar. 31, 2025)). Although many Fifth Circuit opinions reference forgery convictions as a hindrance to possession of firearms, McNeil claims there is no post-Bruen Fifth Circuit opinion squarely addressing disarmament based solely on this basis. See id.

With respect to the Government's dangerousness argument, McNeil avers that it does not erase the fact that her only felony offense is over two decades old. See id. at 4. By using generic statements of dangerousness, she contends that the Government is merely trying to create its own standard. See id. Thus, McNeil submits that the Government has failed to meet its burden, and her Motion should be granted. See id.

**III. Analysis.**

The first step of the Bruen analysis is satisfied here. The Fifth Circuit has held that "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1);" thus, McNeil's conduct prohibited by § 922(g)(1) is covered by the Second Amendment. Diaz, 116 F. 4th at 467. See U.S. v. William Robinson, No. 22-253, 2024 WL 4827375, at *6 (E.D. La. Nov. 19, 2024). Since the first step is satisfied, the Government has the burden to demonstrate that regulating McNeil's possession of a firearm is consistent with the Nation's historical tradition of firearm regulation. Id.

In Diaz, the Fifth Circuit conducted an analysis of "Bruen's historical inquiry into our Nation's tradition of regulating possession by felons in particular." 116 F. 4th at 466. The Court only analyzed Diaz's pertinent criminal history, which consisted of vehicle theft, evading arrest, and possessing a firearm as a felon. Id. In the instant case, McNeil's pertinent criminal history consists of a prior felony conviction under La. R.S. § 14:72 (Forgery). See Record Document 23-1 & 23-2. Under step two of Bruen, the Government "must demonstrate that the Nation has a longstanding tradition of disarming someone with a criminal history analogous to this." Diaz, 116 F. 4th at 467.

The Fifth Circuit and several federal district courts have acknowledged the existence of laws that, at the time of founding, classified forgery as a capital crime. See U.S. v. Quiroz, 125 F. 4th 713, 719–20 (5th Cir. 2025); U.S. v. McCuin, No. 24-38, 2025 WL 1285680, at *7 (S.D. Miss. May 1, 2025) ; U.S. v. Davis, No. 22-93, 2025 WL 964439, at *6 (M.D. La. Mar. 31, 2025); U.S. v. Hicks, No. 24-00437, 2025 WL 847874, at *4 (N.D. Tex. Mar. 18, 2025); U.S. v. Staeger, No. 24-108, 2025 WL 605053, at *2 (S.D. Miss. Feb. 25, 2025). For example, the Fifth Circuit pointed out that "[b]etween 1790 and 1805,

5

Georgia sentenced individuals to death for…forgery." Quiroz, 125 F. 4th at 719–20. If forgery was considered a capital crime at the time of founding, today's lesser restriction of permanent disarmament under § 922(g)(1) is in line with the Nation's tradition of serious and permanent punishment. See Staeger, 2025 WL 605053, at *2.

The relevant case law supports a finding that the historical laws regulating forgery are "sufficiently analogous to [McNeil's] predicate conviction of forgery." Hicks, 2025 WL 847874, at *4. Therefore, the Court finds that "[b]ecause the modern and historical regulations impose comparable burdens that are comparably justified, disarming [McNeil] is consistent with this Nation's history of severely punishing those convicted of…forgery." Id. McNeil's argument that her forgery conviction is her only predicate offense is irrelevant. The analysis under Diaz does not focus on the number of predicate offenses, but rather, on conducting a historical analogy to laws in existence at the time of founding.

## CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that McNeil's Motion to Dismiss the Indictment (Record Document 21) is **DENIED**.

An Order consistent with this Ruling shall issue herewith.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 29th day of May, 2025.

_____
UNITED STATES DISTRICT COURT JUDGE